**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SHEDRICK D. WRIGHT,

    Plaintiff,

v.

Case No.: 6:18-cv-263-Orl-22KRS

SANTANDER CONSUMER USA, INC.
and ACE AUTO RECOVERY, INC.,

    Defendants.
_____/

**MEMORANDUM IN OPPOSITION TO DEFENDANT ACE AUTO RECOVERY, INC.'S MOTION TO DISMISS COUNTS VI AND VIII OF THE SECOND AMENDED COMPLAINT**

Plaintiff, Shedrick D. Wright, an individual ("Mr. Wright"), by and through his undersigned attorneys, pursuant to Rule 3.01, Local Rules of the United States District Court, Middle District of Florida, files this his Memorandum of Law in Opposition to the Motion to Dismiss Counts VI and VIII of the Second Amended Complaint[1] filed herein by Defendant, Ace Auto Recovery, Inc., a Florida corporation ("Ace Recovery") [DE 18]:

## I. INTRODUCTION

### A. SYNOPSIS OF LITIGATION

**1. Overview of the Current Repossession Practices of National Auto Lenders**

During the past several years, national lenders such as Santander Consumer USA, Inc. ("Santander") have established contractual relationships with so-called "forwarders"

---

[1] Contemporaneously herewith, Mr. Wright has filed a Notice of Voluntary Dismissal as to Count VIII, rendering the issues raised as to the claim for negligence moot.

or "aggregators" in order to more effectively and cost-efficiently repossess collateral. *See*, *"An Open Letter to the Repossession Recovery Industry,"* Santander Consumer USA, Inc. (2012). The business operation of forwarders has been described by one court as follows:

> This dispute's origins lie in the shifting landscape of collection practices. In the past, when a creditor needed a debt collected or something repossessed, it would contact and retain a collection agent wherever the debtor located. But the business model has changed with the introduction of forwarding companies. Forwarding companies act as middlemen between lenders and local collection agents, operating nationwide. When a creditor needs a collection done, it contracts with a forwarding company, which, in turn, allocates the collection to a collection agent in an appropriate location. Forwarding companies maintain networks of collection agents and negotiate favorable rates to save creditors money and allow the forwarding companies to make a profit. Forwarding companies do not, however, contact the debtors themselves.
>
> *Badeen v. Par, Inc.*, 853 N.W.2d 303, 305 (MI 2014).

Since the increase in the use of fourth party aggregators or forwarders by large lenders, a growing amount of criticism has been directed towards the practice as a result of the lack of involvement of the aggregator in the actual repossession process. *See, e.g.,* *"Why the Process of Forwarding Repossessions Must Change,"* American Repossessor Magazine, September 8, 2011. One of the significant criticisms directed to the business model of forwarders or aggregators is that the drive to reduce costs has imperiled the safety of the public as repossession agents are required to do business on the thinnest of margins. *See, "Repos Gone Bad: Are Big Lenders Responsible for Driveway Violence,"*

www.huffingtonpost.com/2012/03/22/repo-men-violence-big-lenders-auto-repossession_n_1354673.html.

The increase in violence in self-help repossessions has been the subject of concern on the part of both regulatory agencies and advocacy groups.  *See* "*Repo Madness – How Automobile Repossessions Endanger Owners, Agents and the Public*," National Consumer Law Center, March 2010.  Most industry experts agree that increase in violence is a direct result of the use of forwarders in the repossession process.  As one expert opined:

> You don't need much of an imagination to come up with the answer.  Assaults, injuries, and even death can and have occurred.  Many laws exist to protect the consumer against predatory loans, and more are proposed.  But with the danger of repossession contingency pricing is real, and its effects are being felt in every repossession that occurs nationwide.  The effect is to promote, and to even force some repossession agents to commit some spectacularly outlandish and illegal acts, all under the banner of 'self-help repossession.'
>
> Operation Violence, by Peter Conrad
> http://expertpages.com/news/operation-violence.htm.

As a result of its policies with respect to aggregators, Santander has been defending a growing number of lawsuits based on tortious conduct by its repossessors. *See, e.g., Power v. Santander Consumer USA, Inc*., 2013 WL 6703992 (Fla. Cir. Ct. April 25, 2013) [wrongful death action as a result of shooting of recovery agent during repossession]; *Woodrum v. Santander Consumer USA, Inc.*, in the United States District Court, Southern District of Indiana, Case No. 17-cv-00001 [Santander's forwarder, PAR North America, hired recovery agent which falsely imprisoned vehicle owner]; s*ee also,*

*"Repos Gone Bad: Are Big Lenders to Blame for Driveway Violence?"* (Huffington Post, March 22, 2012) [wrongful death action against Santander as a result of recovery agent violence].

## 2. Overview of Amended Complaint

### a. Introduction

In the instant action through his Second Amended Complaint for Damages and Incidental Relief ("Complaint"), Mr. Wright has filed claims against the Defendants arising from the unlawful repossession of the automobile of Mr. Wright. In particular, Defendants repossessed the automobile of Mr. Wright through a breach of the peace and contrary to the requirements of Florida Statute Chapter 679, *et sequi,* known more commonly as the "Uniform Commercial Code" ("UCC"). As a result, Mr. Wright is advancing claims against Defendants for *inter alia* violations of state and federal consumer protection laws seeking damages and injunctive relief with respect to the repossession of his vehicle. With respect to Ace Recovery, Mr. Wright has asserted that Ace Recovery violated the requirements of 15 USC Section 1692, *et sequi,* known more commonly as the "Fair Debt Collection Practices Act" ("FDCPA").

### b. Details of Unlawful Repossession

In April 22, 2016, Mr. Wright entered into a Retail Installment Contract Simple Finance Charge ("Finance Agreement") to finance the purchase of a used 2016 Dodge Dart ("Dodge Dart"). Since purchasing the Dodge Dart, Mr. Wright experienced significant financial difficulties as a result of health problems related to diabetes. As a

result of his health condition, Mr. Wright was unable to work and fell behind in his monthly installment payments on the Dodge Dart (Complaint - ¶¶ 7-12).

In July 2017, Mr. Wright returned to work and communicated to Chrysler Capital that Mr. Wright would become current on the installment payments on the Dodge Dart as soon as possible. In response, Chrysler Capital agreed with Mr. Wright that Chrysler Capital would forbear in taking any action against the Dodge Dart and Mr. Wright would make his next payment in August (Complaint - ¶¶ 13-14).

Notwithstanding the agreement not to repossess the vehicle, Chrysler Capital caused Ace Auto Recovery to be hired to repossess the Dodge Dart. On July 15, 2017 at approximately 5:42 a.m., an employee and/or agent of Ace Auto Recovery went to the place of residence of Mr. Wright in Orlando, Florida for the purpose of repossessing the Dodge Dart (Complaint - ¶¶ 15-16).

After Mr. Wright was awakened by the sound of a truck outside the house, Mr. Wright looked out the front window of the house and saw a black tow truck pulling in under the carport of the house.  When the driver of the tow truck exited his vehicle, the tow truck driver saw Mr. Wright watching him from the window of the house (Complaint - ¶¶ 16-19).

To deter Mr. Wright from interfering in the repossession of the Dodge Dart, the driver repositioned a pistol on his belt in order to purposefully and conspicuously display same (Complaint - ¶ 19).[2]  Although Mr. Wright believed that the agent was wrongfully

---

[2] Recovery agents are strictly prohibited from carrying any weapon or firearm while on private property. *See*, Florida Statute §493.6118.

repossessing his vehicle and would have otherwise objected, Mr. Wright was placed in immediate fear and apprehension of being injured by the recovery agent. As a result, Mr. Wright remained in the house watching the recovery agent attach the tow tackle to the Dodge Dart and rapidly remove the vehicle from the carport (Complaint - ¶20).

After the tow truck driver had left the area, Mr. Wright exited his house and discovered that the truck driver had damaged a Buick owned by his mother, Rosie Wright Harris, and a Chevrolet owned by his sister's boyfriend, Damon Moore, in order to gain access to the Dodge Dart which was parked underneath the carport. The Buick and Chevrolet vehicles were each moved by the tow truck driver to gain access to the Dodge Dart which was parked behind the vehicles in the carport. Both the Buick and Chevrolet sustained damage to their tires as a result of being dragged by the tow truck, with the Buick having its front bumper ripped off by the tow truck (Complaint - ¶¶ 21-23).

### 3. Overview of Motion to Dismiss

In response to the Second Amended Complaint, Ace Recovery seeks dismissal of the FDCPA claim under Count VI asserting that Ace Recovery falls outside the scope of the definition of a debt collector under 15 U.S.C. § 1692(a)(6). As such, Ace Recovery overlooks the plain language of that section in that a recovery agency is specifically liable for any violations of the FDCPA at 15 U.S.C. § 1692f(6), including "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if *** there is no present right to possession of the property claimed as collateral through an enforceable security interest." As explained below, both the absence of a default and a breach of state law requiring peaceful repossession deprives Ace Recovery,

as the "enforcer of security interest," of a "present right to possession" under Section 1962f(6). As alleged in the Complaint, Ace Recovery has liability under the FDCPA for repossessing the Dodge Dart when it had no present right to do so.

### B. SYNOPSIS OF APPLICABLE LAW

#### 1. *SCOPE AND PURPOSE OF FDCPA*

The FDCPA was enacted to protect consumers from and to eliminate "abusive debt collection practices by debt collectors. 15 U.S.C. §1692(e). The FDCPA also protects law abiding debt collectors who refrain from using abusive debt collection practices from being competitively disadvantaged. *Id.* The FDCPA was enacted by Congress after finding "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. 15 U.S.C. §1692(a). Moreover, Congress found that "abusive debt collection practices contribute to a number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.*

The FDCPA enumerates general standards of proscribed conduct, defines and restricts abusive collection acts as detailed in the Act, and provides for specific disclosure rights for consumers. Such consumer rights include the requirement that debt collectors provide a so-called "validation notice," which discloses the amount of debt, the name of the creditor, a statement that the validity of the debt will be assumed unless disputed by the consumer within thirty (30) days from receipt of the notice, and an obligation to verify the debt, including the disclosure of the name and address of the original creditor, if the consumer so requests. 15 U.S.C. §1692g; *see*, *Russell v. Equifax*, 74 F.3d 30, 34 (2nd Cir. 1996); *Bleich v. Revenue Maximization Group*, 233 F. Supp.2d 496 (E.D. N.Y.

2002). In addition to consumer disclosure rights, 15 U.S.C. §1693 provides for a broad proscription against "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or information concerning a consumer." 15 U.S.C. §1693e(10).

### 2. FDCPA AS A STRICT LIABILITY STATUTE

The FDCPA is a strict liability statute. As such, there are no unimportant or non-actionable violations. *Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 63 (2nd Cir. 1993); *Taylor v. Perrin, Landry, de Launay & Durand*, 103 F.3d 1232 (5th Cir. 1997); *Mammen v. Bronson & Migliacco, LLP*, 715 F.Supp.2d 1210 (M.D. Fla. March 27, 2009). Further, the FDCPA, as with all consumer statutes, is afforded broad and liberal interpretation in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Financial Systems, Inc.*, 831 F. Supp. 941, 944 (D.Conn. 1993); *cf.*, *Rodash v. AIB Mortgage Company*, 16 F.3d 1142, 1144 (11th Cir. 1994) abrogated on other grounds by *Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996); *Schroder v. Suburban Coastal Corporation*, 729 F.2d 1371,1380 (11th Cir. 1984).

### 3. FDCPA AS A REMEDIAL STATUTE

Because the FDCPA is a remedial statute, "it should be construed liberally in favor of the consumer, and, when in doubt, against debt collectors." *Heathman v. Portfolio Recovery Associates, LLC,* 2013 WL 3746111, at *2 (S.*D.* Cal. 2013); *accord, Agnelo v. Affinity Management Services*, 841 F.3d 944, 950 (11th Cir. 2016) ["obligation to construe consumer protection statutes broadly in favor of consumers"].

## II.  STANDARD OF REVIEW

Until relatively recent, federal courts routinely followed the rules set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." However, pursuant to the United States Supreme Court opinion in *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007), to survive a motion to dismiss, a complaint must now contain factual allegations that sufficiently raise a right to relief above a speculative level. *Bell Atlantic Corporation*, 127 S. Ct. at 1965.  As under *Conley*, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. *Id.* at 1964-65; *see*, *Stephens v. Dept. of Health and Human Services*, 901 F.2d 1571, 1573 (11th Cir.1990). A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all the necessary factual allegations. *Id*.  Accordingly, a well-pleaded complaint will survive a motion to dismiss even if it appears that a recovery is very remote and unlikely. *Id*. at 1965; *Iqbal v. Ashcroft*, 566 U.S. 662, 129 S. Ct. 1937, 1940 (2009) [pleading standards do not require "detailed factual allegations"].

## III.   LEGAL ARGUMENT

### A.  RECOVERY AGENTS ARE SUBJECT TO LIABILITY UNDER THE FDCPA FOR A BREACH OF THE PEACE DURING SELF-HELP REPOSSESSION.

Generally, Section 1692a (6) of the FDCPA defines a "debt collector" to include "only those persons or businesses whose principal purpose is the collection of 'debts.' *Fleming–Dudley v. Legal Investigations, Inc.*, 2007 WL 952026, at *4 (N.D. Ill. March

22, 2007). Thus, repossession companies—who seek collection of collateral—are "ordinarily beyond the scope of the FDCPA." *Purkett v. Key Bank USA, Inc.,* 2001 WL 503050, at *2 (N.D. Ill. May 10, 2001). Section 1692(a)(6), however, contains a limited exception that "[f]or the purpose of section 1692f(6) of this title, [the term 'debt collector'] also includes any person who uses any instrumentality of interstate commerce... in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a (6). This "last caveat bears emphasis," because it subjects a recovery agent to the FDCPA "solely for purposes of § 1692f (6)." *Fleming–Dudley*, 2007 WL 952026, at *4 (emphasis removed) (citing *Jordan v. Kent Recovery Services, Inc.,* 731 F. Supp. 652, 657 (D.Del.1990) ("Such a purposeful inclusion for one section of the FDCPA implies that the term 'debt collector' does not include an enforcer of a security interest for any other section of the FDCPA.")).

Section 1692f (6) prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement."

15 U.S.C. § 1692f (6).

Here, Mr. Wright alleged violations of subsection (A) for repossessing the Dodge Dart when there was not a present right to possession:

> ● as there was not a default under the finance agreement (Complaint -¶¶ 13-15); and
>
> ● as Ace Recovery could not repossess the Dodge Dart through a breach of the peace (Complaint-¶¶ 16-23).

A repossession agent violates 15 U.S.C. §1962f(6) when a repossession involves a breach of the peace. "Even though a person whose business does not primarily involve the collection of debts would not be a debt collector for purposes of the Act generally, if his principal business is the enforcement of security interests, he must comply with the provisions of the Act dealing with non-judicial repossession abuses." *Glazer v. Chase Home Finance, LLC,* 704 F.3d 453, 463-465 (6th Cir. 2013), quoting *Piper v. Portnoff Law Assoc. Ltd.,* 396 F.3d 227 (3d Cir. 2005).

Most recently, the United States Supreme Court remarked:

> So perhaps that it comes as little surprise that we now face the question who exactly qualifies as a 'debt collector' subject to the Act's rigors. ***Everyone agrees that the term embraces the repo man – someone hired by a creditor to collect an outstanding debt.***
>
> *Henson v. Santander Consumer USA, Inc.,* 137 S. Ct.1718, 1720 (2017)
> [emphasis added by Plaintiff]

Not surprisingly, courts have consistently held that repossession agencies that "breach the peace" under applicable state law during violate the FDCPA. *Alexander v. Blackhawk Recovery Investigation, L.L.C.,* 731 F.Supp.2d 674, 679-681 (E.D. Mich. 2010). Notably, federal "[c]ourts presented with the issue of determining whether a repossession agency has violated § 1692f(6) look to the applicable state self-help repossession statute which identifies the circumstances under which an enforcer of a

security interest does not have a present right to the collateral at issue." *Id.* at 679, citing *Purkett v. Key Bank USA, N.A.*, 2001 WL 503050 (ND Ill. May 10, 2001); *see, also*, *Smith v. AFS Acceptance, LLC*, 2012 WL 1969415 (ND June 1, 2012) [repossession agent is subject to the FDCPA if repossession occurs as a result of "breach of peace"].

Florida Statute §679.609 the provides a statutory duty of care owed by creditors such as Santander to not breach the peace in the act of repossession. Section 679.609 provides that a secured party may proceed with taking possession of its collateral without judicial process, but if it so proceeds, it must do so "without breach of the peace." §679.609(2)(b). Whether a secured creditor or its agent breaches the peace is a question of fact for a jury. *See, e.g., Madden v. Deere Credit Services,* 598 So.2d 860 (Ala. 1992).

Applying similar state law under the UCC, courts have determined that conduct considerably less egregious than that presented here "breached the peace," thus violating the FDCPA at § 1962f (6). *See*, *Alexander,* 731 F.Supp.2d at 675 (repeated visits to plaintiff's residence at unreasonable hours, accompanied by shouting and loud knocking on the door); *Dudley v. Legal Investigations, Inc.,* 2007 WL952026*5 (N.D. Ill March 22, 2007) (impersonating a police officer to effect a repossession); *Plueger v. Auto Fin. Group, Inc.,* No. CV-97-9499, 1999 U.S. Dist. LEXIS 16701 (C.D. Cal. April 26, 1999) at **17-18 (throwing objects at debtor's home and shouting profanity during attempt at repossession); *Purkett v. Key Bank USA, N.A.*, 2001 WL 503050 (N.D. Ill. 2001) [recovery agent working for Santander which broke through locked door to repossess car sufficient to allege breach of peace for purposes of liability under 15 U.S.C. §1692f(6)];

*AFS Acceptance*, 2012 WL 1969415 * 3 [ towing vehicle while daughter of debtor inside];*Vantu v. Echo Recovery, LLC,* 85 F.Supp.3d 939 (N.D. Ohio 2015).

The facts and reasoning of the *Echo Recovery* decision aptly show the application of the FDCPA against recovery agents that breach the peace. According to the complaint in *Echo Recovery,* the plaintiff, Wanda Vantu, objected to a repossession by a recovery agent who was attempting to repossess her ex-husband's van, which was parked in the driveway. *Id.* at 940. After Vantu objected to the repossession, the recovery agent blocked Vantu from leaving her property in the van. Similar to the facts at hand, the recovery agent brandished a semi-automatic pistol and threatened her. *Id.* at 941.

In response to the allegations of violation of the FDCPA, the recovery agent – much like Ace Recovery – argued that the FDCPA claim of Vantu should be dismissed as the "allegations show only that [the defendant] was an enforcer of a security interest, not . . . a debt collector." *Id.* at 942. In rejecting the argument of the recovery agent, the United States District Court for the Northern District of Ohio recognized:

> An entity that enforces security interests (a repossession agency, for example) is generally not a "debt collector." *Montgomery, supra,*346 F.3d at 699–700. But in limited circumstances the FDCPA treats such an entity as a debt collector. *Glazer v. Chase Home Fin., LLC,*704 F.3d 453, 463–64 (6th Cir.2013). Section 1692a(6) provides that, "[f]or purposes of section 1692f(6)" only, the term "debt collector" also "includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a (6). Section 1692f(6), in turn, forbids a debt collector from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if ... there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A). In tandem, then, these provisions subject security enforcers who attempt to repossess collateral without a present right to possess the collateral to

liability under the FDCPA. *Glazer, supra,* 704 F.3d at 463–64; *Montgomery, supra,* 346 F.3d at 699–700.

*Id.* at 993.

The Court further opined:

"Courts presented with the issue of determining whether a [security-interest enforcer] has violated § 1692f(6) look to the applicable state self-help repossession statute which identifies the circumstances under which an enforcer of a security interest does not have a present right to the collateral at issue." *Alexander v. Blackhawk Recovery & Investigation, L.L.C.,* 731 F.Supp.2d 674, 679 (E.D.Mich.2010). In general, a security-interest enforcer loses its right to present possession of the collateral if it breaches the peace. *See* O.R.C. § 1309.609(B)(2) (secured party may repossess collateral without judicial process only "if it acts without breach of the peace"); *cf. Ford Motor Credit Co. v. Ryan,* 189 Ohio App.3d 560, 939 N.E.2d 891, 909 (2010) (repossessor may enter "another's land to effectuate a repossession, so long as the repossessor does not breach the peace"); *see also Alexander, supra,* 731 F.Supp.2d at 678–81 (reaching same result under Michigan's version of Uniform Commercial Code).

*Id.*

Thus, based on the facts presented in the complaint of Vantu – that the recovery agent attempted to repossess the van by pulling out a gun – a breach of peace occurred "under these circumstances, Echo had no right to present possession of the collateral, and its conduct (if true) violated the FDCPA." *Id.* at 944.

In his Complaint, Mr. Wright has alleged the following facts which demonstrate a breach of the peace:

- that the tow truck driver repositioned a pistol in his belt in order to purposely and conspicuously display same (Complaint - ¶ 19); and

- that the tow truck driver moved not one but two vehicles owned by third parties in order to gain access to the Dodge Dart, tearing off the bumper of one in the process (Complaint - ¶¶ 21-23).

A jury could find that a breach of peace occurred thus depriving Ace Recovery of the present right to recover the Dodge Dart. As such, Mr. Wright has stated a cause of action under the FDCPA for the actions of Ace Recovery in repossessing the Dodge Dart without a present right to do so as a result of the breach of peace.

### B. ACE RECOVERY IS LIABLE FOR VIOLATING THE FDCPA BY REPOSSESSING THE DODGE DART IN THE ABSENCE OF A DEFAULT BY MR. WRIGHTWITH RESPECT TO HIS OBLIGATIONS TO SANTANDER.

Without a prerequisite default, a secured creditor is not entitled to resort to self-help repossession. Fla. Stat. §679.609. If a recovery agent repossesses property in the absence of a default, the recovery agent has "no present right to possession of the property claimed as a collateral." 15 U.S.C. §1692f (6). Accordingly, the recovery agent is subject to liability under the FDCPA pursuant to 15 U.S.C. §1692f (6)(A). *See, e.g., Lee v. Toyota Motor Sales USA, Inc.,* 2016 WL4608220 (N.D. Cal. Sept. 6, 2016); *compare, Buzzell v. Citizen's Auto. Fin., Inc*., 802 F.Supp.2d 1014 (D. Minn. 2011) [accepting late payments and continuing not to insist on strict compliance with loan terms eliminated the legal right to repossess vehicle, and doing so violated §1692f (6)]; *Harris v. Americredit Fin. Services, Inc*., 2005 WL218044 (W.D. Va. Sept. 9, 2005) [taking vehicle after agreement to forbear].

In his Complaint, Mr. Wright has alleged that Santander had agreed to forbear in taking any action against the Dodge Dart and that Mr. Wright would make his next payment in August (Complaint - ¶¶ 13-14). When viewed in the light most favorable to Mr. Wright at this pleading stage, Santander did not have the legal right to repossess the

Dodge Dart in the absence of default. Accordingly, there was no "present right to possession" and any action taken by Ace Recovery violated §1692f (6).

## IV. CONCLUSION

WHEREFORE, Plaintiff, Shedrick D. Wright, an individual, respectfully requests this Court deny the Motion to Dismiss the Second Amended Complaint in accordance with the above argument. If the Court finds any aspect of the subject pleading to be in anyway deficient, Plaintiff would respectfully request leave of Court to amend if possible to ameliorate the deficiency.

*/s/ Robert W. Murphy*
ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Fort Lauderdale, Florida 33316
(954) 763-8660 Telephone
(954) 763-8607 Fax
E-mail: rphyu@aol.com;
rwmurphy@lawfirmmurphy.com
*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on April 19, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being furnished, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing, to the following counsel of record:

R. Frank Springfield, Esq.
Burr & Forman LLP
420 N. 20th Street, Suite 3400
Birmingham, AL 35203
Tel: (205) 251-5187
E-mail:  fspringf@burr.com

Lauren M. Reynolds, Esq.
Burr & Forman LLP
200 S. Orange Avenue, Suite 8090
Orlando, Florida 32801
Tel: (407) 540-6600
E-mail:  lreynolds@burr.com

*Counsel for Defendant, Santander Consumer USA, etc.*


Howard M. Waldman, Esq.
Wicker Smith O'Hara McCoy & Ford, P.A.
390 N. Orange Avenue, Suite 1000
Orlando, Florida 32801
Tel: (407) 843-3939
E-mail:  hwaldman@wickersmith.com

*Counsel for Defendant, Ace Auto Recovery, Inc.*


                              */s/ Robert W. Murphy*
                              Attorney